IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JOHNSON W. GREYBUFFALO,

                Plaintiff,

      v.

GARY BOUGHTON, JAMES LABELLE,
JOLINDA WATERMAN, SANDRA
MCARDLE and REBECCA TRACY,

                Defendants.

OPINION AND ORDER

18-cv-776-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Pro se plaintiff Johnson W. Greybuffalo is proceeding on Eighth Amendment claims that prison staff at the Wisconsin Secure Program Facility failed to provide him adequate treatment for his severe back pain. (I have amended the caption to reflect defendant Tracy's full name.) Before the court are defendants' motions for summary judgment, dkt. ##45 and 53, and plaintiff's unopposed motion to voluntarily dismiss defendants James Labelle and Jolinda Waterman, dkt. #52.

At plaintiff's request, his claims against defendants Labelle and Waterman will be dismissed with prejudice. For the reasons below, I conclude that plaintiff has failed to produce sufficient evidence to establish the key elements of his Eighth Amendment claim against the remaining defendants. Therefore, the motions for summary judgment filed by defendants Gary Boughton, Rebecca Tracy and Sandra McArdle will be granted.

Plaintiff has not filed any proposed findings of fact in support of his claims, but in response to defendants' proposed findings of fact, he submitted two sworn declarations that

1

I have considered to the extent that they are based on his personal knowledge.  From defendants' proposed findings of fact and plaintiff's responses to them, I find the following facts to be undisputed unless otherwise noted.

## UNDISPUTED FACTS

### A.  The Parties

Plaintiff Johnson Greybuffalo is currently incarcerated at the Jackson Correctional Institution, but all events relevant to his complaint occurred while he was incarcerated at the Wisconsin Secure Program Facility, where defendants are employed.  Gary Boughton is the warden, Sandra McArdle is a nurse practitioner and Rebecca Tracy is a nurse clinician 2.

### B.  Treatment by Defendant Tracy

At about 12:30 a.m. on December 20, 2017, plaintiff was seen in the health services unit.  Defendant Tracy and Lucas Stowe, a non-defendant nurse clinician, were present and interacted with plaintiff during that visit.   Although Stowe does not remember the appointment, he recognizes his handwriting and signature in the progress note for that visit.  (Plaintiff says that he spoke with Tracy and a male nurse (presumably Stowe) and that they took his blood pressure and temperature, but he says that neither nurse physically examined him.)

According to Stowe's review of the December 20 progress note, plaintiff complained about having sharp shooting pain, numbness and tingling down his left leg.  There was no

physician on site at that time of day, and registered nurses like Tracy and Stowe cannot prescribe medications or diagnose or determine a course of treatment for inmates. Plaintiff was advised to take his prescribed ibuprofen along with staggered doses of acetaminophen and use an ice pack for pain until he could see an advanced care practitioner later in the day. (The parties dispute plaintiff's reaction to his treatment. Stowe avers that plaintiff was satisfied with the recommended action. Plaintiff says that he was not allowed to ask questions and fully explain his symptoms and did not get any actual help.)

According to Stowe, if plaintiff's back pain had been an emergency, Stowe could have called the on-call physician to examine plaintiff. Stowe did not believe that plaintiff's situation qualified as an emergency because plaintiff was not having trouble breathing or presenting with any other life threatening symptoms. (Plaintiff says that Stowe had no basis for reaching this conclusion because he never performed a physical examination. Plaintiff also avers that he was in extreme pain, had been awake for 40 hours and had high blood pressure.) According to Stowe, pain medications, ice and seeing a provider later that morning were appropriate under the circumstances.

### C. Treatment by Defendant McArdle

Plaintiff went to the health services unit a second time on December 20, 2017 to be evaluated by defendant McArdle, an advanced care provider. (The parties dispute whether any physical examination occurred. McArdle says that she observed plaintiff walk with his left leg turned outward but he had no palpable muscle spasm and that she performed a

3

straight leg test for sciatic nerve involvement but it was negative.  Plaintiff says that McArdle did not physically examine him or ask him about his symptoms and that she simply asked him whether the ice and Tylenol had helped his pain.)  McArdle assessed plaintiff with lower back pain radiating into his left leg for which McArdle states that the standard of care is conservative treatment, including Tylenol, NSAIDs, heat and cold and core strengthening exercises.  McArdle offered plaintiff ice, warm moist compresses, a shot of Torodol and exercises such as yoga.  She also referred him for a left sciatic nerve electromyography (which was completed in early 2018), physical therapy (which he started in January 2018) and a TENS unit.  (Plaintiff questions why this test would be needed if he had a negative straight leg test, but he has not presented any evidence showing that McArdle did not make the referral.)  It was McArdle's medical opinion that no further interventions were necessary at that time.

After his appointment, plaintiff filed a health services request on December 20, 2017, complaining that his back pain and leg swelling had worsened after he had received the shot. McArdle reviewed the request on December 21 and concluded that no additional interventions could be provided other than Tylenol, Ibuprofen and using heat and cold as needed.  It was her medical judgment that plaintiff did not to be re-evaluated because the guidelines for treating chronic low back pain without signs of an emergent condition call for a referral to physical therapy, which already had been made.

Plaintiff did not file any other health services requests regarding his back between December 20, 2017 and February 2018.  (Plaintiff says that he filed several requests through

early January 2018, but he does not provide any details about these requests, when they were made or what response he received. Although plaintiff included copies of several of his health service requests in attachment to his affidavit, none of them predate March 2018. Dkt. #60-1.) He underwent a physical therapy evaluation on January 16, 2018 and was provided a TENS unit and a home exercise program. In 2018 and 2019, McArdle provided plaintiff further assessments, interventions, prescriptions and referrals for his reported back pain, including medication, ice, recreation restrictions, neurology consultations, a back injection and eventually a microdiscectomy (surgery).

### D.  Plaintiff's Inmate Complaints

Plaintiff filed two inmate complaints about his back pain. Although the position description for warden states that the warden "interacts with complaint examiners to review and answer all complaints filed under the Inmate Complaint Review System," defendant Boughton is not the reviewing authority for inmate medical complaints and would not have been made aware of any medical complaints submitted by plaintiff. Rather, inmate medical complaints are reviewed by the Bureau of Health Services Regional Nursing Coordinator. Plaintiff never wrote defendant Boughton about his back pain or medical treatment.

As the warden, defendant Boughton also is responsible for the overall administration and operation of the facility and for implementing Department of Corrections policies and directives and legislative and judicial mandates. Although his position description states that he "interacts" with supervisors to insure that "programs function appropriately in Health

Services," he does not provide medical care to inmates.  Medical care at the facility is provided by nurses and advanced care providers.


OPINION

In his complaint and briefs in response to defendants' motion for summary judgment, plaintiff alleges that defendants Tracy and McArdle acted with deliberate indifference in failing to take reasonable measures to treat his severe back pain in December 2017 and that defendant Boughton failed to intervene to insure that plaintiff received treatment after plaintiff filed inmate complaints in December 2017 and January and February 2018.  A prison official may violate the Eighth Amendment if the official is "deliberately indifferent" to a "serious medical need."  Estelle v. Gamble, 429 U.S. 97, 104-05 (1976).  See also Pyles v. Fahim, 771 F.3d 403, 408 (7th Cir. 2014) (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)) (Eighth Amendment "protects prisoners from prison conditions that cause 'the wanton and unnecessary infliction of pain,'" including "grossly inadequate medical care.").  At least for purposes of summary judgment, defendants do not deny that plaintiff's severe back pain posed a serious medical need.  Therefore, the question is whether plaintiff has submitted enough evidence to allow a reasonable jury to conclude that any of the defendants acted with "deliberate indifference" toward his serious medical need.  Gomez v. Randle, 680 F.3d 859, 865 (7th Cir. 2012).

"Deliberate indifference" means that the officials were aware that the prisoner faced a substantial risk of serious harm but disregarded the risk by consciously failing to take

reasonable measures to address it.  Forbes v. Edgar, 112 F.3d 262, 266 (7th Cir. 1997).  An official cannot be considered "deliberately indifferent" unless he is "both aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Snipes v. Detella, 95 F.3d 586, 590 (7th Cir. 1996). Inadvertent error, negligence, gross negligence and ordinary malpractice are not cruel and unusual punishment within the meaning of the Eighth Amendment.  Vance v. Peters, 97 F.3d 987, 992 (7th Cir. 1996).

Medical providers such as defendants Tracy and McArdle may violate the Eighth Amendment if they prescribe a course of treatment without exercising medical judgment or they do so knowing that the treatment will be ineffective.  Whiting v. Wexford Health Sources, Inc., 839 F.3d 658, 662-63 (7th Cir. 2016).  In cases like this one, in which a prisoner alleges that he received some treatment for his medical condition, but that the treatment was inadequate, the relevant question is whether defendants' actions were "such a substantial departure from accepted professional judgment, practice, or standard, as to demonstrate that the person responsible actually did not base the decision on such a judgment."  Estate of Cole by Pardue v. Fromm, 94 F.3d 254, 261-62 (7th Cir. 1996).  In such cases, courts must defer to a medical professional's treatment decision unless no minimally competent professional would have chosen the same course of treatment under the circumstances.  Pyles v. Fahim, 771 F.3d 403, 409 (7th Cir. 2014).  A "[d]isagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth

7

Amendment violation." <u>Id.</u>  Evidence sufficient to create a jury question might include the obviousness of the risk from a particular course of medical treatment, the defendant's persistence in "a course of treatment known to be ineffective" or proof that the defendant's treatment decision departed so radically from "accepted professional judgment, practice, or standards" that a jury may reasonably infer that the decision was not based on professional judgment.  <u>Id.</u>  A medical professional's choice to pursue an "easier and less efficacious treatment" or "a non-trivial delay in treating serious pain" may also support a claim of deliberate indifference.  <u>Berry v. Peterman</u>, 604 F.3d 435, 441 (7th Cir. 2010) (citation omitted).

I will discuss defendants' alleged actions separately.

## A.  <u>Defendant Tracy</u>

Apart from possibly being in the room with Nurse Stowe and plaintiff, it is not clear what involvement defendant Tracy had in plaintiff's medical care on December 20, 2017. Plaintiff contends that she scolded him for waiting to ask for help, did not physically examine him and told him he was not going to get help or go to the hospital.  He also contends that he was left writhing in pain.  However, plaintiff has not presented any evidence suggesting that Tracy ignored his pain or otherwise acted with deliberate indifference.  The undisputed facts show that after plaintiff explained that he was experiencing sharp shooting pain, numbness and tingling down his left leg, he was given ice and two types of pain medication and was scheduled to see an advanced care provider later

that morning.

Plaintiff seems to believe that defendant Tracy should have done more for his pain, but he has not presented any evidence apart from his own lay opinion to contradict Stowe's medical judgment that plaintiff's symptoms did not qualify as an emergency or require additional treatment at that stage.  It is undisputed that plaintiff was not having trouble breathing or exhibiting any other life threatening symptoms.  In addition, there is no evidence that Tracy (or Stowe) knew that the pain medication and ice would not be sufficient to treat plaintiff's pain while he waited several hours to see an advanced care provider.  Although plaintiff faults Tracy for merely taking his temperature and checking his blood pressure and not physically examining him, he does not present any evidence to show how a "physical examination" would have helped or what it would have revealed about his condition.  Crawford v. Obaisi, 2019 WL 7020497, at *4 (N.D. Ill. Dec. 20, 2019) ("Without evidence that Dr. Obaisi's failure to physically examine Crawford substantially departed from accepted medical standards, Crawford has only shown that he disagrees with Dr. Obaisi's treatment.").

Without more, a reasonable jury would not conclude that the decisions to give plaintiff ibuprofen, Tylenol and ice for pain and schedule him for a follow-up visit later in the day were substantial departures from accepted medical judgment.  Accordingly, defendant Tracy is entitled to summary judgment with respect to plaintiff's claim against her.

B. <u>Defendant McArdle</u>

Plaintiff contends that defendant McArdle failed to physically examine him on December 20, 2017, offered only minimal treatment and then later refused to see him or provide additional treatment after a shot she prescribed for him worsened his pain and made his leg swell.  Defendant McArdle says that she did examine plaintiff by observing him walk, feeling for muscle spasms and performing a straight leg test.  However, even if defendant McArdle did not do these things, it is undisputed that she assessed lower back pain radiating into his left leg and provided him Tylenol, NSAIDs, ice, warm compresses, a shot of Torodol and core strengthening exercises such as yoga.  She also referred him for a left sciatic nerve electromyography (which was completed in early 2018), physical therapy (which he started in January 2018) and a TENS unit (which he received in January 2018).  As with defendant Tracy, plaintiff has failed to present any evidence showing how a different type of examination would have helped or what it would have revealed about his condition.  Moreover, he has failed to present any evidence that McArdle's decision not to perform other tests or provide additional interventions at that time substantially departed from accepted medical standards.  <u>Proctor v. Sood</u>, 863 F.3d 563, 568 (7th Cir. 2017) (quoting <u>Estelle</u>, 429 U.S. at 107) ("The decision whether further diagnostic testing . . . was necessary is 'a classic example of a matter for medical judgment.'").

The undisputed facts also show that defendant McArdle responded to plaintiff's December 20, 2017 health services request about having increased pain and significant swelling after he received the Torodol shot.  Plaintiff has failed to present any evidence to

10

suggest that McArdle failed to exercise medical judgment or acted blatantly inappropriately in concluding that plaintiff did not need to be reevaluated and that the appropriate interventions were Tylenol, Ibuprofen and using heat and cold as needed.  Arnett v. Webster, 658 F.3d 742, 751 (7th Cir. 2011) (plaintiff can show professional disregarded serious medical need only if "subjective response was so inadequate that it demonstrated an absence of professional judgment" or "so blatantly inappropriate as to evidence intentional mistreatment").  Because a reasonable jury would not conclude that defendant McArdle's response to plaintiff's complaints rose to the level of deliberate indifference, she is entitled to summary judgment with respect to plaintiff's claim against her.

## C.  Defendant Boughton

Finally, plaintiff contends that defendant Boughton acted with deliberate indifference by failing to intervene to insure that plaintiff received proper treatment for his back pain. However, for an individual defendant to be liable under § 1983, he must have caused or participated in a constitutional violation.  Backes v. Village of Peoria Heights, Ill., 662 F.3d 866, 870 (7th Cir. 2011) (supervisors may be liable only when they know about misconduct and facilitate, approve, condone or knowingly turn blind eye to it); Burks v. Raemisch, 555 F.3d 592, 593-94 (7th Cir. 2009) ("Liability depends on each defendant's knowledge and actions, not on the knowledge or actions of persons they supervise."); Hildebrandt v. Illinois Department of Natural Resources, 347 F.3d 1014, 1039 (7th Cir. 2003).  Apart from pointing to Boughton's role as the warden and some excerpts from his job description,

plaintiff does not present any evidence that Boughton knew about plaintiff's back pain or the alleged lack of treatment for it.  In fact, it is undisputed that plaintiff never complained to Boughton or otherwise informed him of his complaints.

Although plaintiff argues that Boughton's job description states that he works with other supervisors to insure that programs function appropriately in health services and that inmate complaint investigators review and answer all inmate complaints, it is undisputed that Boughton is not the reviewing authority for inmate complaints concerning medical issues and has no role in patient care.  Moreover, nonmedical prison staff like Boughton are entitled to defer to the judgment of health professionals so long as they do not ignore prisoner complaints, which Boughton did not do in this case.  Berry v. Peterman, 604 F.3d 435, 440 (7th Cir. 2010); Johnson v. Doughty, 433 F.3d 1001, 1010 (7th Cir. 2006). Accordingly, defendant Boughton is entitled to summary judgment with respect to plaintiff's claim against him.

ORDER

IT IS ORDERED that

1.  Plaintiff Johnson W. Greybuffalo's motion to voluntarily dismiss defendants Jolinda Waterman and James LaBelle, dkt. #52, is GRANTED.

2.  The motions for summary judgment filed by defendants Sandra McArdle, Gary Boughton and Rebecca Tracy, dkt. ##45 and 53, are GRANTED.

3.  The clerk of court is directed to enter judgment in favor of defendants and close

this case.

Entered this 13th day of May, 2020.

BY THE COURT:

/s/

_____

BARBARA B. CRABB
District Judge